UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CHERI L. BOSWORTH,

       Plaintiff,                    CIVIL ACTION NO. 06-11798

      v.                               DISTRICT JUDGE NANCY EDMUNDS

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I. Introduction**

      This Social Security case comes before the court on the parties' cross-motions for summary judgment. For the reasons stated below, the court recommends that the Commissioner's motion be granted and that plaintiff's motion be denied.

**II. Background**

      On April 8, 2002, plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that she was disabled due to a convulsive disorder and a left hand impairment. (Tr. 72, 84) Plaintiff alleged a disability onset date of February 13, 1991, the date on which she suffered a severe injury to her left hand in an industrial accident. As the Administrative Law Judge (ALJ) stated in his opinion:

> The claimant worked with a rolling machine on February 13, 1991, when her left hand got caught and degloved the skin from the distal forearm down to the fingers. She underwent numerous operations, during the first of which the non-viable skin was removed and covered with Briobane. Two days later she underwent amputations of the index, long and ring fingers, carpal tunnel release and revascularization of the left ring finger. Eventually the ring finger required further amputation. The thumb was amputated at the initial injury.

(Tr. 16) Plaintiff was 46 years of age when she filed the applications. She completed school through the ninth grade, and did production work prior to her injury. Plaintiff has not worked since her alleged onset date.

The Social Security Administration (SSA) denied plaintiff's claim on July 12, 2002. (Tr. 27-31) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 32) The hearing was held on May 11, 2004 before ALJ Douglas N. Jones. (Tr. 250-306) Plaintiff, represented by appointed counsel, appeared and testified at the hearing. The ALJ also took testimony from a vocational expert (VE).

On January 9, 2006, the ALJ issued a decision granting in part and denying in part plaintiff's claim. (Tr. 10-22) The ALJ determined that plaintiff suffered from phantom pain associated with the amputation of her fingers, major motor seizures, hypertension, depression, and polysubstance abuse involving long term methadone maintenance treatment. Further, the ALJ determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), but that she did not have an impairment or combination of impairments that met or medically equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security Regulations. The ALJ then found that through May 31, 2002, plaintiff

"was capable of making a successful vocational adjustment to work that exists in significant numbers in the national economy," and, therefore, that she was not disabled through that date. (Tr. 20) However, the ALJ concluded that as of June 1, 2002, plaintiff was no longer capable of working due to uncontrolled seizures. Plaintiff's insured status for DIB expired on December 31, 1996. Plaintiff was thus granted SSI benefits, with a starting date of June 1, 2002.

Plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 8-11) The Council denied the request on February, 2006. (Tr. 6-8) The ALJ's decision thus became the final determination of the Commissioner.

On June 22, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As indicated above, the matter comes before the court on the parties' cross-motions for summary judgment. Plaintiff contends that the ALJ's determination that she was capable of engaging in substantial gainful activity prior to June 1, 2002, is not supported by substantial evidence. She requests that the ALJ's decision be reversed and that the matter be remanded for an award of disability benefits with an onset date of December 31, 1995. The Commissioner contends that the disability determination is supported by substantial evidence and should thus be affirmed.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  See also 42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  See also 42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520, 416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment."  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997). The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." "[T]he decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

The ALJ determined that prior to June 1, 2002, plaintiff had the residual functional capacity (RFC) to work with certain restrictions. The ALJ's RFC determination is set forth below:

> No period of 12 consecutive months has elapsed *before* June 1, 2002, during which the claimant lacked the residual functional capacity to perform jobs that can be performed with only one hand, using the non-dominant left arm for non-gripping or non-grasping

> support only, and involves lifting and carrying only 15 pounds, only occasional (up to 33%) bending at the waist, occasional bending at the knees, occasional kneeling, no crawling, occasional climbing stairs, no climbing ladders, no driving, no detailed instructions, no extended period of concentration, occasional interaction with the public, occasional changes in work setting or procedures, and occasion independent decisions or planning....

(Tr. 21)  The ALJ posed a hypothetical question to the VE based upon this RFC determination. In response, the VE testified that a person of plaintiff's age and work history, with the limitations included in the RFC determination, was capable of working as a machine operator, an inspector, a security guard, and a clerical assistant, and that there were, collectively, 24,000 such jobs in the lower peninsula of Michigan.  Based upon this testimony, the ALJ concluded that plaintiff was not disabled prior to June 1, 2002.

Where an ALJ poses an accurate hypothetical to VE, and the VE testifies that a person with the described limitations is capable of performing work that exists in significant numbers in the national economy, such testimony is sufficient to support a finding that the claimant is not disabled.  Varley v. Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Plaintiff contends that the hypothetical posed by the ALJ was inaccurate and, therefore, that the VE's testimony does not support the ALJ's disability determination.  Plaintiff raises no objections to the physical limitations included in the hypothetical.  Rather, she claims that the ALJ failed to fully account for her mental impairments.  For the reasons stated below, the court concludes that plaintiff has failed to demonstrate that the ALJ erred in the manner alleged.

There is evidence in the record indicating that plaintiff has experienced seizures since she was fourteen years of age.  (Tr. 137, 222)  The ALJ's disability finding was, as indicated above,

based upon evidence indicating that as of June, 2002, plaintiff's seizures were uncontrolled. (Tr. 184) There is, however, no evidence showing that her seizures were uncontrolled prior to the expiration of her insured status. To the contrary, there is some indication in the record that her seizures were well-controlled with medication, and no indication that her medication caused any significant side effects. (Tr. 137, 222)

In May of 1995, Dr. Russell H. Reeves, Ph.D., a licensed psychologist, examined plaintiff and found that she had post-traumatic stress disorder symptomatology, a moderate level of depression, and a high level of generalized anxiety. (Tr. 225) Plaintiff suggests that the ALJ did not adequately account for Dr. Reeves' findings. The court disagrees. Nothing in Dr. Reeves report suggests that plaintiff's mental impairments resulted in such significant functional limitations as to preclude all work activity. Moreover, the ALJ, who acknowledged Dr. Reeves' report, reasonably accommodated these impairments by including in the hypothetical he posed to the VE restrictions of no detailed instructions, no extended period of concentration, and only occasional interaction with the public, changes in the work setting or procedures, and independent decision making or planning. There is otherwise no evidence in the record that plaintiff sought mental health counseling, or even a mental health evaluation, prior to the expiration of her insured status.

Plaintiff also notes that she entered a methadone maintenance program in 1995 due to a history of drug abuse. The court fails to see how this undermines the ALJ's disability determination. There is no documentation in the record of significant side effects resulting from

this medication during the relevant time period and nothing else in the record that would indicate that plaintiff's use of methadone precluded all employment during that time.

The record reflects that plaintiff has had a difficult time adjusting to her post-injury life, and the court is sympathetic to the difficulties she has faced. However, sympathy is no substitute for hard evidence. Plaintiff has failed to marshal, or identify in the record, evidence from which this court could reasonably conclude that the ALJ erred in assessing her nonexertional impairments as they existed prior to June 1, 2002. The medical record regarding plaintiff's nonexertional impairments is scant. The only mental health professional to have examined plaintiff was Dr. Reeves, and, as noted above, there is nothing in his report that would serve to undermine the ALJ's findings regarding the functionally limiting effects of plaintiff's mental impairments. There is otherwise no objective medical evidence in the record regarding the severity of plaintiff's mental impairments prior to the expiration of her insured status. In sum, there is simply nothing in the record to warrant this court in disturbing the ALJ's findings regarding plaintiff's nonexertional impairments.

Plaintiff has not raised any other claims of error, and none are apparent in the record. Accordingly, the court is constrained to conclude that the hypothetical the ALJ posed to the VE included an accurate portrayal of plaintiff's physical and mental impairments and, therefore, that the VE's testimony constitutes substantial evidence in support of the ALJ's disability determination.

### V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary be **GRANTED** and that plaintiff's cross-motion for summary judgment be **DENIED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | S/VIRGINIA M. MORGAN |
|  | VIRGINIA M. MORGAN |
| Dated: October 18, 2006 | UNITED STATES MAGISTRATE JUDGE |

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record via the Court's ECF System and/or U. S. Mail on October 18, 2006.

                                                  s/Kendra Byrd
                                                  Case Manager to
                                                  Magistrate Judge Virginia M. Morgan